# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**    : | |
| : | **CIVIL ACTION:** |
|       **Plaintiff**    : | **Docket No.: 1:16-cv-04948** |
| : | |
|   **vs.**    : | |
| : | |
| **JAMAICA WELLNESS MEDICAL, P.C.,**    : | |
| **BRIJ MITTAL, M.D., MARC LAMPA, D.C.,**    : | |
| **UNITED WELLNESS CHIROPRACTIC,**    : | |
| **P.C., GREGORY MILLER a/k/a GREGORI**    : | |
| **MICKILWSKI, DAILY MEDICAL**    : | |
| **EQUIPMENT DISTRIBUTION CENTER,**    : | |
| **INC., LIDA'S MEDICAL SUPPLY, INC.,**    : | |
| **and DAVID SAFIR**    : | |
| : | |
|       **Defendants**    : | |
| : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO TEMPORARILY STAY AND ENJOIN

Respectfully submitted,

***GOLDBERG, MILLER & RUBIN, P.C.***

BY:       /s/
          MATTHEW MORONEY, ESQUIRE (mm6572)
          767 Third Avenue
          24th Floor
          New York, NY 10017
          646-863-1531
          *Counsel for Plaintiff*
          *State Farm Mutual Automobile Insurance Company*

DATED: March 6, 2017

# TABLE OF CONTENTS

Page

STATEMENT OF FACTS......................................................................................1

    A.    Preliminary Statement...........................................................................1

    B.    Brief Restatement of Plaintiff's Allegations and Procedural History.................1

    C.    Brief Overview of the New York State No-Fault Laws...............................3

STANDARD OF REVIEW...................................................................................4

ARGUMENT...................................................................................................5

    A.    The Defendants Should Be Enjoined From Bringing Claims in State Court and
             Arbitration Proceedings That Are Compulsory Counterclaims...................... 5

    B.    The Courts Have Stayed Arbitrations for Unpaid Bills While a
             Corresponding Federal Suit for Insurance Fraud Was Ongoing......................8

    C.    The State Court Actions Should Be Stayed..............................................11

    D.    State Farm Mutual Will Suffer Irreparable Harm Should the Matters Not
             Be Stayed....................................................................................13

    E.    This Lawsuit Is the Most Appropriate Forum To Decide Global Issues
             At Issue Between the Parties...............................................................15

    F.    Defendants Will Suffer No Harm Should the Matters Be Stayed...................17

    G.    State Farm Mutual Has Demonstrated Sufficiently Serious Questions Going
             to the Merits to Make Them Fair Ground for Litigation.............................18

CONCLUSION...............................................................................................20

# TABLE OF AUTHORITIES

## CASES

Page

Loop Prod v. Capitol Connections, LLC, 2014 WL 11016375 (Pa.Super. Jan. 8, 2014)............2

Au Bon Pain Corp v. Artect, Inc., 653 F.2d 61 (2d. Cir. 1981)........................................…..2

Allstate Ins. Co. v. Mun, 751 F.3d 94 (2d Cir. 2014)...................................................3

Doran v. Salem Inn, Inc., 422 U.S. 922 (1975)..........................................................…..4

Allstate Insurance Co. v. Elzanaty, 929 F.Supp.2d 199 (E.D.N.Y. 2013)..........................…..5

Kamerling v. Massanari, 295 F.3d 206 (2d Cir. 2002).....................................................5

Waldman Pub. Corp. v. Landoll, Inc., 43 F.3d 775 (2d Cir. 1994)....................................5

Bruce v. Martin, 60 F. Supp. 616 (1988)...................................................................5

Computer Assoc. Int'l, Inc. v. Altai, Inc., 893 F.2d 26 (2d Cir. 1990)...............…...............…..5

Adam v. Jacobs, 950 F.2d 89 (2d Cir. 1991)...........................................................…..5

Rubin v. Valicenti Advisory Services, Inc., 236 F.R.D. 149 (W.D.N.Y. 2006).....................….5

National Equipment Rental, Ltd. v. Fowler, 287 F.2d 43 (2d Cir. 1961).............................5

Southern Constr. Co., Inc. v. Pickard, 371 U.S. 57 (1962)...............................................6

Mitsubishi Int'l Corp. v. Keystone Camera Corp., 1990 WL 16090 (S.D.N.Y. Feb. 13, 1990)....7

Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281(1970).…...7

Government Employees Insurance Co. v. Natalio Damien, M.D., No. 10-CV-5409
(SLT)(JMA)(E.D.N.Y. Jan. 4, 2011)..........................................................…...............9

Liberty Mutual Insurance Co. v. Excel Imaging, P.C., 879 F.Supp.2d 243 (E.D.N.Y. 2012).….10

Auto One Ins. Co. v. Manhattan Heights Medical, P.C., 24 Misc.3d 1229(A), 899 N.Y.S.2d 57
(Table) (N.Y.Sup. Ct. Queens Co. 2009)..................................................................…..10

Allstate Insurance Company v. Tvildiani, 1:14-cv-07328 (E.D.N.Y. 2015).........................10

St. Paul Travelers Ins. Co. v. Nandi, 15 Misc.3d 1145(A), 841 N.YS.2d 823 (Table) (N.Y.Sup. Ct. Queens Co. 2007)...............................................................................11

Liberty Mutual Insurance Co. v. Rai Medical Health, P.C., 140 A.D.3d 1029 (N.Y. Sup. Ct. App.Div. 2016)......................................................................................11

ONBAN Corp., Inc. v. Holtzman, 1997 WL 381779 (N.D. N.Y. 1997)............................12

Sperry Rand Corp. v. Rothlein, et al, 288 F. 2d 245 (2d. Cir. 1961)................................12

Harris v. Wells, 764 F. Supp. 743 (D. Conn. 1991)....................................................12

Microtech Contracting Corp. v. Mason Tenders Dist. Council of Greater New York, 55 F.Supp.3d 381 (E.D.N.Y.2014)......................................................................12

Somoza v. Pechnick, 3 A.D.3d 394, 2004 N.Y. Slip Op. 00213 (2004)...........................17

Turtur v. Rothschild Registry International, 26 F.3d 304 (2d Cir. 1994)...........................17

United Transp. Union, General Committee of Adjustment 505 v. Long Island R. Co., 1981 WL 2244 (E.D.N.Y. Oct. 16, 1981)....................................................................19

Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738 (2d Cir. 1953)..........................19

Nature's Bounty, Inc. v. Superx Drugs Corp., 490 F.Supp. 50 (E.D.N.Y. 1980)..................19

## STATUTES

N.Y. Ins. Law §§ 5101, et seq..............................................................................3

11 N.Y.C.R.R. §§ 65 et seq..................................................................................3

11 N.Y.C.R.R. 65-4.2........................................................................................3

Fed. R. Civ. P. 13(a).........................................................................................5

11 NYCRR 65-3.9(a).......................................................................................11

# I. STATEMENT OF FACTS

## A. Preliminary Statement

Plaintiff, State Farm Mutual Automobile Insurance Company (hereinafter "State Farm Mutual"), respectfully submits this Memorandum of Law in support of its motion, pursuant to Rules 13 and 65 of the Federal Rules of Civil Procedure, seeking to temporarily enjoin Defendants, Jamaica Wellness Medical, P.C. (hereinafter "Jamaica Wellness"), Brij Mittal, M.D., Marc Lampa, D.C., United Wellness Chiropractic, P.C. (hereinafter "United Wellness"), Gregory Miller, Daily Medical Equipment Distribution Center, Inc. (hereinafter "Daily Medical"), and Lida's Medical Supply, Inc. (hereinafter "Lida's Medical") from pursuing the claims against State Farm Mutual that are at issue in this litigation in other venues during the pendency of the present litigation. Specifically, while this case proceeds, State Farm Mutual seeks an order:

> (1) temporarily enjoining Defendants from commencing and/or prosecuting or causing to be commenced or prosecuted, any proceedings in state court or arbitration against State Farm seeking the payment of unpaid bills; and

> (2) temporarily staying all proceedings pending in arbitration and state court between State Farm and Defendants, Jamaica Wellness Medical, P.C., United Wellness Chiropractic, P.C., Daily Medical Equipment Distribution Center, Inc., and Lida's Medical Supply, Inc.

As set forth herein, Plaintiff established all of the prerequisites for the requested relief, including: (i) irreparable harm to Plaintiff absent the requested relief; (ii) a showing of sufficiently serious questions going to the merits to make them a fair ground for litigation; and (iii) a balance of hardships tipping decidedly in favor of Plaintiff.

## B. Brief Restatement of Plaintiff's Allegations and Procedural History

State Farm Mutual commenced this lawsuit on September 6, 2016 seeking damages for: (1) common law fraud; (2) unjust enrichment; (3) conspiracy to commit fraud; and (4) and aiding

and abetting fraud. In addition, State Farm Mutual brought a count for declaratory judgment asserting that all claims seeking the payment of bills submitted by the Defendants, Jamaica Wellness, United Wellness, Daily Medical, and Lida's Medical are not compensable.[1]

As alleged in the Complaint, the Defendants documented fraudulent injuries and billed for unnecessary and excessive treatment, testing, and equipment purportedly provided to persons who were involved in motor vehicle accidents and covered by policies of insurance issued by State Farm Mutual.[2] As detailed in the Complaint, the patient records reveal collectively, the pervasive patterns of fabricated patient injuries, unnecessary treatment, testing, and durable medical equipment. It should be noted that Defendants, Daily Medical and Lida's Medical failed to respond to the Complaint and defaults have been entered against them. Accordingly, the allegations in the Complaint are deemed admitted against them. See Loop Prod v. Capitol Connections, LLC, 2014 WL 11016375 (Pa.Super. Jan. 8, 2014) (citing Au Bon Pain Corp v. Artect, Inc., 653 F.2d 61, 65 (2d. Cir. 1981) ("upon the entry of a party's default, a court should accept 'as true all of the factual allegations of the complaint'")).

In response to the Complaint, Defendants, Jamaica Wellness and United Wellness filed an Answer with a Counterclaim on November 7, 2016. In their Counterclaim, Jamaica Wellness and United Wellness seek the payment of all unpaid bills. The Counterclaim alleges:

> The defendants have been damaged in that the plaintiff has failed to pay the defendants for the charges submitted to the plaintiff for medically necessary services provided to the defendants' assignors.
>
> (2) JAMAICA WELLNESS MEDICAL, P.C.[,] BRIJ MITTAL, M.D., MARC LAMPA, D.C., and UNITED WELLNESS CHIROPRACTIC, P.C. on the counterclaim, in the amount of the sum of the claims submitted to plaintiffs by defendants pursuant to the assignment of no-fault benefits…

---

[1] Brij Mittal, M.D., Marc Lampa, D.C., David Safir, and Gregory Miller, a/k/a Gregori Mickilwski were also named as Defendants in the lawsuit.
[2] Defendants did not challenge the sufficiency of the Complaint by filing a motion to dismiss.

<u>See</u> Defendants' Counterclaim.

Notwithstanding their Counterclaim, Jamaica Wellness and United Wellness are concurrently prosecuting claims in state court lawsuits and arbitrations. In those state court and arbitration actions, Jamaica Wellness and United Wellness are prosecuting the <u>same claims</u> that are at issue in this lawsuit. To date, the Defendants have filed at least twenty (20) arbitrations and seventy-six (76) lawsuits in New York state court that are currently pending. <u>See</u> ***Exhibit "A"*** for pending state court lawsuits filed by Defendants in New York State Court; <u>See</u> ***Exhibit "B"*** for pending arbitrations filed by Defendants.

### C. <u>Brief Overview of the New York State No-Fault Laws</u>

State Farm Mutual underwrites automobile insurance in the State of New York. New York's No-Fault Laws (N.Y. Ins. Law §§ 5101, <u>et seq.</u>; 11 N.Y.C.R.R. §§ 65 <u>et seq.</u>) are designed to ensure that injured victims of motor vehicle accidents have efficient mechanisms to pay reasonable fees for necessary healthcare goods and/or services. <u>See</u> <u>Allstate Ins. Co. v. Mun</u>, 751 F.3d 94, 99 (2d Cir. 2014). Under the No-Fault Laws, automobile insurers are required to provide Personal Injury Protection Benefits, which include up to $50,000.00 per claimant for reasonable expenses that are incurred for the necessary healthcare goods and/or services.

For any unpaid bill, the healthcare provider may initiate a lawsuit against the automobile insurance company for breach of contract. These "collections" lawsuits may be brought in state court or arbitrations through the American Arbitration Association. <u>See</u> 11 N.Y.C.R.R. 65-4.2. The choice of forum (i.e., court or arbitration) is made exclusively by the healthcare provider.[3]

---

[3] When a healthcare service provider files AAA arbitration, they become the "applicant" and the automobile insurance company becomes the "respondent." By filing an arbitration proceeding, a healthcare service provider foregoes discovery, and the matter is determined without the rules of evidence.

Additionally, as in the instant case, under certain circumstances (e.g. as a Counterclaim), a healthcare provider can bring its claims in federal court.

## II. STANDARD OF REVIEW

The decision to grant or deny injunctive relief rests within the sound discretion of this Court. See Doran v. Salem Inn, Inc., 422 U.S. 922 (1975). A preliminary injunction may be granted upon a demonstration that the plaintiff will suffer irreparable harm and either (1) a likelihood of success on the merits of the instant case against Defendants is shown or (2) a showing of sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the plaintiff. See e.g., Allstate Insurance Co. v. Elzanaty, No. 11-cv-3862 (ADS)(ARL), 929 F.Supp.2d 199, 221 (E.D.N.Y. 2013), Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002); Waldman Pub. Corp. v. Landoll, Inc., 43 F.3d 775 (2d Cir. 1994). Likelihood of success should not be the focus at the early stages of a case, because such an inquiry would be premature. Instead, the courts should focus on the second prong of the test above in cases in the early stages of litigation such as this. See, e.g., Elzanaty, at 217; Bruce v. Martin, 60 F. Supp. 616 (1988).[4]

---

[4] In the instant matter, Defendants, Lida's Medical and Daily Medical have not filed an Answer to the Complaint and, as a result, all of Plaintiff's averments are deemed admitted. As such, there is more than a strong likelihood of success on the merits of the instant case against them. See Loop Prod v. Capitol Connections, LLC (citing Au Bon Pain Corp v. Artect, Inc., 653 F.2d 61, 65 (2d. Cir. 1981) ("upon the entry of a party's default, a court should accept 'as true all of the factual allegations of the complaint'")). Defaults have been entered by the Clerk of Court against Lida's Medical and Daily Medical.

As to Defendants, Jamaica Wellness and United Wellness, although State Farm Mutual has propounded their first set of interrogatory demands as well as document demands, the Defendants have not yet responded. The Court has Ordered Defendants to respond. Additionally, there have been no depositions conducted of either named parties or non-party witnesses. As such, the second prong (a showing of sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of State Farm Mutual) is an appropriate standard by which to evaluate the request for injunctive relief because it is premature to determine the likelihood of success of the allegations against the remaining Defendants.

# III.   ARGUMENT

## A.   The Defendants Should Be Enjoined From Bringing Claims in State Court and Arbitration Proceedings That Are Compulsory Counterclaims

For any bills that were outstanding at the time of the filing of the Answer, any arbitration and state court actions that are filed on these outstanding bills would be compulsory counterclaims.  Under Federal Rule of Civil Procedure 13(a):

> (1) *In General.*  A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim:
>
> > (A)   arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
> > (B)   does not require adding another party over whom the Court cannot acquire jurisdiction.

Counterclaims are compulsory when a "logical relationship" exists between the claims in the complaint and the opposing party's potential counterclaim. Computer Assoc. Int'l, Inc. v. Altai, Inc., 893 F.2d 26, 29 (2d Cir. 1990); Adam v. Jacobs, 950 F.2d 89, 92 (2d Cir. 1991) ("The test for determining whether a counterclaim is compulsory is whether a logical relationship exists between the claim and the counterclaim and whether the essential facts of the claims are 'so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'").  When making this determination, the Second Circuit "has taken a broad view, not requiring an absolute identity of factual backgrounds ... but only a logical relationship between them." Rubin v. Valicenti Advisory Services, Inc., 236 F.R.D. 149, 153 (W.D.N.Y. 2006).

The purpose of the compulsory counterclaim device is to bring all logically related claims into a single litigation, thereby avoiding a multiplicity of suits. National Equipment Rental, Ltd. v. Fowler, 287 F.2d 43, 45 (2d Cir. 1961); See also Adam, 950 F.2d at 93 ("We believe that the rule plays a unique role in conserving judicial resources and that a court's failure to stay its hand

unduly burdens the litigation process."); <u>Valicenti Advisory Services</u>, 236 F.R.D. at 154 ("The focus of the rule is on judicial economy, which is promoted when all legal claims arising out of the same factual scenario are presented to a single jury."). Federal Rule 13(a) was "designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." <u>Southern Constr. Co., Inc. v. Pickard</u>, 371 U.S. 57, 60 (1962).

It has been recognized that courts have power to enjoin parties from prosecuting, as separate actions, claims that should be brought as compulsory counterclaims in an already filed suit. <u>Id.</u>; <u>See, e.g.</u>, <u>Fowler</u>, 287 F.2d at 45 (finding that when cases are brought in two federal district courts, the latter court may enjoin further action in the more recently commenced suit); <u>Adam</u>, 950 F.2d at 93 ("Ideally, once a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceeding."); <u>Mitsubishi Int'l Corp. v. Keystone Camera Corp.</u>, 1990 WL 16090, *3 (S.D.N.Y. Feb. 13, 1990) (where related suits were filed in New York and New Jersey federal district courts the Court held that when a rival action is commenced in another jurisdiction, the original court may enjoin the prosecution of the rival action).

In <u>Bruce v. Martin</u>, 680 F.Supp. 616 (S.D.N.Y. 1988), the Court granted plaintiff's motion to enjoin defendants from commencing any collection suits against the plaintiffs other than through counterclaims. Plaintiffs moved for a preliminary injunction arguing that they would be irreparably harmed by "potentially inconsistent decisions and multiple vexatious and burdensome lawsuits." <u>Id</u>. Plaintiffs further argued that the federal court would lose its "ability to render a full, final and complete relief for all parties" and that there would be no prejudice to the defendants as they could bring their collection claims as counterclaims in the federal litigation. <u>Id.</u> In examining the language of the All–Writs Act, the Court found:

> **Even before a federal judgment is reached, however, the preservation of the federal court's jurisdiction or authority over an ongoing matter may justify an injunction against actions in state court.** Such "federal injunction relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case."

Bruce, 680 F.Supp. at 621 citing Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 295 (1970). (emphasis added). The Bruce court also noted that a "Court of equity may grant an injunction to avoid multiple actions at law if the actions involve the same issues of law and fact so that the decisions in one action will be determinative of all." Id. at 622.

The Bruce Court enjoined the defendants from commencing any future claims in state court. Id. at 624. The Bruce Court recognized that multiple litigations could result in decisions, which would "jeopardize the court's ability to afford the parties full, final and complete relief, and was enough to show irreparable harm. Id. at 621-622. Specifically, the Court stated:

> [T]he Plaintiffs have satisfied the irreparable harm injury standard by showing the **destructive effect that scores of fragmented state actions** on the issues raises here would have on this court's ability to afford the parties full, final and complete relief.

Id. at 622. The Bruce Court held: (i) implications of res judicata from a state court ruling was sufficient to show hardship; (ii) there was potential harm to the court's jurisdiction as a result of multiple actions; and (iii) the commencement of numerous separate actions in state courts would interfere with the proceedings of the federal court and would seriously impair its flexibility and authority to decide. Id.[5]

---

[5] The Bruce Court also observed that the balance of hardships favored the plaintiff, noting that prosecuting the federal claim would be undermined by having to present the same claims separately in any individual collection suits commenced by defendants. Id. at 623. The court noted that "an injunction will avoid the costs of obtaining counsel to appear and obtain a stay of, or if necessary, to proceed with litigating in state court." Id.

Instantly, for any bills that were outstanding at the time of the filing of the Answer, any arbitration and state court actions that are filed on these outstanding bills would be compulsory counterclaims. In fact, not only are these claims compulsory counterclaims, but Defendants did bring these claims in their Counterclaim. In their Counterclaim, Jamaica Wellness and United Wellness are seeking as damages every outstanding bill, including the outstanding bills that are at issue in the arbitrations and state court suits. Additionally, in their Rule 26 Disclosures, Jamaica Wellness and United Wellness confirmed that every outstanding claim (including the claims listed in the declaratory judgment claim and at issue in the arbitrations and state court suits) are part of their Counterclaim. Specifically, in their Rule 26 Disclosures, Jamaica Wellness and United Wellness stated that all of the claims identified in State Farm Mutual's Rule 26 Disclosure support their Counterclaim. See *Exhibit "C"* for the Defendants' Rule 26 Disclosure.

As stated in their Rule 26 Disclosure, Jamaica Wellness and United Wellness are seeking $500,000.00 in unpaid bills. In the arbitrations and state court suits, Defendants are claiming more than $225,000.00, but there are also many other outstanding claims that State Farm Mutual expects will be filed in state court and arbitrations. In other words, it is expected that the Defendants will continue to file new actions for the same claims asserted in the Counterclaim. Accordingly, this Court should temporarily enjoin the Defendants from filing any state court and arbitration actions.

**B.**     **The Courts Have Stayed Arbitrations for Unpaid Bills While a Corresponding Federal Suit for Insurance Fraud Was Ongoing**

In addition to enjoining the Defendants from filing new collection actions, this Court should stay the ongoing arbitration actions seeking the payment of unpaid bills. In support, it should be noted that the Courts of the Eastern District of New York have consistently stayed

arbitration proceedings for unpaid bills while a corresponding federal suit for insurance fraud was ongoing.

In Allstate Insurance Co. v. Elzanaty, 929 F.Supp.2d 199 (E.D.N.Y. 2013), the Court considered Allstate's motion to stay all pending arbitration claims and enjoin all future arbitration claims for unpaid medical bills. In Elzanaty, the defendants asserted a counterclaim that they provided "necessary medical services ... but that Allstate had failed to pay these claims. In this regard, [defendants] asserted that they had been damaged in the amount of $1,005,436.30." The Elzanaty Court recognized that the outcome of the federal case necessarily dictated the result of all pending and future arbitrations over unpaid claims –if Allstate prevailed in the federal case, then Allstate would necessarily prevail in all pending and future arbitration claims. Id. at 217-218.

The Elzanaty Court found that under the All Writs Act, it was permitted to enjoin arbitration proceedings:

> It would severely threaten any judgment of this Court to have pending arbitrations or future arbitrations result in inconsistent rulings with regard to Uptown's [the medical service provider] eligibility for reimbursement of No-Fault insurance payments. This Court is fully aware that piecemeal litigation and inefficiency are at times unavoidable, especially in light of the [Federal Arbitration Act's] strong mandate that contractual arbitration rights be respected. However, if these rights are delayed, rather than effectively terminated, **the Court believes that a stay is the most appropriate solution here in order to avoid the large volume of arbitrations and inconsistent judgments that are gradually culminating in a procedural and substantive train wreck.**

Id. at 220 (emphasis added). Ultimately, the Elzanaty court enjoined all pending and future arbitrations brought by the defendants.

In another example, Government Employees Insurance Co. v. Natalio Damien, M.D., No. 10-CV-5409 (SLT)(JMA)(E.D.N.Y. Jan. 4, 2011) although the Court did not publish an opinion, this Court enjoined state court and arbitration proceedings. According to this Court's Order, the

defendants were "enjoined from commencing and/or prosecuting, or causing to be commenced

or prosecuted, any future collection proceeding against GEICO seeking payment for no-fault

benefits on behalf of the Corporate Defendants, either through state court proceedings or

arbitration…" as well as "from prosecuting any collection proceedings currently pending before

the American Arbitration Association between GEICO and the Corporate Defendants, or any of

them, and all such arbitrations are hereby stayed pending the resolution of this action." A true

and accurate copy of the Complaint and Order in Government Employees Insurance Co. et al. v.

Natalio Damien, M.D., et al. is attached hereto as *Exhibit "D."*

In Liberty Mutual Insurance Co. v. Excel Imaging, P.C., 879 F.Supp.2d 243 (E.D.N.Y.

2012), insurers sued a medical provider alleging violations of common law fraud and other

related causes of action, along with bringing a claim for declaratory judgment that the defendants

were not entitled to reimbursement for unpaid claims. The Plaintiff insurers then filed a motion

to stay all of the arbitration proceedings between the parties. In response, this Court stayed these

arbitration proceedings, stating:

> Permitting these individual claims to proceed to arbitration while their claim for a
> declaratory judgment remains pending in this court puts the plaintiffs at
> significant risk of multiple judgments that may be inconsistent with the ultimate
> decision in this case. In the interests of judicial economy, arbitration of such
> unpaid claims is stayed pending a decision in the present case.

Id. at 264.[6]

The case law in the state courts of New York also supports a stay as well. See, e.g., Auto

One Ins. Co. v. Manhattan Heights Medical, P.C., 24 Misc.3d 1229(A), 899 N.Y.S.2d 57 (Table)

(N.Y.Sup. Ct. Queens Co. 2009) (staying no-fault collection litigation and arbitrations to prevent

repetitive litigation where Supreme Court declaratory judgment action would universally

---

[6] See also, Allstate v. Tvildiani, 14-cv-07328 (E.D.N.Y. 2015) (granting motion for injunction preventing the
defendants from filing and proceeding with No-Fault collection claims in arbitration proceedings).

determine whether professional corporations were fraudulently incorporated); St. Paul Travelers Ins. Co. v. Nandi, 15 Misc.3d 1145(A), 841 N.YS.2d 823 (Table) (N.Y.Sup. Ct. Queens Co. 2007) (staying no fault collection actions in favor of litigating eligibility issues through declaratory judgment action because of multiplicity of lawsuits and possible inconsistent outcomes absent stay); Liberty Mutual Insurance Co. v. Rai Medical Health, P.C., 35 N.Y.S.3d 179, 140 A.D.3d 1029 (N.Y. Sup. Ct. App. Div. 2016) (upholding Supreme Court's order granting Liberty Mutual's motion for preliminary injunction enjoining defendant medical providers from commencing any new actions to collect No-Fault Benefits in an action to recover damages for fraud because of "the plaintiffs demonstrated likelihood of irreparable injury absent the granting of the preliminary injunction, based on the multiplicity of actions and arbitrations, and the risk of inconsistent results").

In Auto One Ins. Co. v. Manhattan Heights Medical, P.C., St. Paul Travelers Ins. Co. v. Nandi, and Liberty Mutual Insurance Co. v. Rai Medical Health, P.C., insurance carriers brought actions seeking a declaratory judgment because the defendant healthcare providers committed fraud and should be prohibited from collecting outstanding No-Fault Benefits.  In all three (3) cases, the trial judge ordered a stay of the underlying arbitrations and/or litigation pending the outcome of the fraud action (and in Liberty Mutual Insurance Co. v. Rai Medical Health, P.C., the trial court order was upheld by the Appellate Division).

## C.    The State Court Actions Should Be Stayed

In addition to enjoining future collection actions and staying arbitration proceedings, this Court should stay ongoing state court actions brought by the Defendants.  As to Daily Medical and Lida's Medical,[7] they have failed to respond to or participate in this lawsuit.  Defaults have

---

[7] As background, these companies dispensed unnecessary and fraudulent durable medical equipment to State Farm Mutual's policyholders.

11

been entered against Daily Medical and Lida's Medical. Accordingly, the allegations in the Complaint are deemed admitted against them. See Loop Prod v. Capitol Connections, LLC (citing Au Bon Pain Corp v. Artect, Inc., 653 F.2d 61, 65 (2d. Cir. 1981) ("upon the entry of a party's default, a court should accept 'as true all of the factual allegations of the complaint'")). As part of the default judgment that will be entered, in addition to damages, this Court will issue a declaratory judgment that Plaintiff has no legal obligation to pay the bills of Daily Medical and Lida's Medical, which will be dispositive of the outstanding claims in state court. An injunction is appropriate to protect the defaults.

It also should be noted that this Court entered a stipulated protective order (docket entry 31). The protective order sets forth the procedures for designating materials as confidential and HIPAA protected, describes the process for using confidential materials in this lawsuit, and the process for challenging confidential designations. This Court has been designated as the arbitrator to govern these issues between the parties. Accordingly, this Court should stay the numerous state court actions as any decisions by these state courts on these issues will render the stipulated protective order illusory. Under similar situations, the federal courts have stayed state court actions. In ONBAN Corp., Inc. v. Holtzman, 1997 WL 381779 (N.D. N.Y. 1997), the court issued an injunction to enforce a similar protective order entered in that case. As explained in ONBAN Corp., Inc., the federal courts can issue an injunction to protect a protective order under the necessary "to protect or effectuate its judgment" exception to the Anti-Injunction Act. Id. at *6-9 (citing Sperry Rand Corp. v. Rothlein, et al, 288 F. 2d 245 (2d. Cir. 1961)). In ONBAN Corp., Inc., the protective order that the injunction protected "defines materials that can properly be designated as confidential and describes the processes to be used in designating materials as confidential and challenging confidential designations." Id at * 8. The court noted

that without an injunction, the same confidentiality issues could be litigated in state court, and therefore, render the federal court order illusory. Id. at * 8-9; see also Harris v. Wells, 764 F. Supp. 743 (D. Conn. 1991) (enjoining state court action as it could interfere with federal court's discovery orders).

### D. State Farm Mutual Will Suffer Irreparable Harm Should the Matters Not Be Stayed

As described in this motion, all of the requirements for an injunction are present, which are: (i) irreparable harm to Plaintiff absent the requested relief; (ii) a showing of sufficiently serious questions going to the merits to make them a fair ground for litigation; and (iii) a balance of hardships tipping decidedly in favor of Plaintiff. As noted above, Defendants are prosecuting the same claims in this lawsuit as a Counterclaim and in arbitration and state court proceedings. These actions, as well as any additional claims that are filed, will undoubtedly jeopardize this Honorable Court's ability to afford the parties full, final, and complete relief. As the Court stated in Elzanaty:

> [A] stay is the most appropriate solution here in order to avoid the large volume of arbitrations and inconsistent judgments that are gradually culminating in a procedural and substantive train wreck.

929 F.Supp.2d at 220. This harm is "neither remote nor speculative, but actual and imminent." See Microtech Contracting Corp. v. Mason Tenders Dist. Council of Greater New York, 55 F.Supp.3d 381, 386 (E.D.N.Y.2014). The multiplicity of these proceedings will likely interfere with those before this Court by posing a risk of multiple, possibly inconsistent decisions, rendered by multiple arbitrators, for instance, selected at random, which could impact the present federal litigation.[8] As recognized in Bruce v. Martin:

---

[8] AAA arbitration No-Fault hearings are brief by design and are not intended to address the types of issues presented in this case, which concern a massive fraud scheme involving multiple professional corporations and conspiracies

> [T]he Plaintiffs have satisfied the irreparable harm injury standard by showing the **destructive effect that scores of fragmented state actions** on the issues raises here would have on this court's ability to afford the parties full, final and complete relief.

Id. at 622. Defendants have already requested in their Counterclaim "the sum of the claims submitted to plaintiffs by defendants pursuant to the assignment of no-fault benefits," thereby indicating their understanding that this Court is the appropriate forum to resolve its claims against State Farm Mutual.

Instantly, without a stay, if this Court finds in favor of State Farm Mutual on the declaratory judgment and Counterclaim, this Court's decision may conflict with awards from any of the various arbitration and state court proceedings, thereby creating enforceability concerns for both State Farm Mutual and the Defendants. As the Court stated in Elzanaty, "allowing a large number of proceedings to be heard by a mix of arbitrators, each of whom will likely come to their own independent and potentially contradictory conclusions" will result in a harm to the insurance carrier from which it cannot recover. Elzanaty, 929 F.Supp.2d at 222. Moreover, the resources, time, and energy that would be expended by all parties favors a stay. The parties will have to make repetitious presentations of evidence and witnesses to different arbitrators and judges when the issue can, and will, be decided globally in the instant litigation. The Bruce court also noted that a "Court of equity may grant an injunction to avoid multiple actions at law if the actions involve the same issues of law and fact so that the decisions in one action will be determinative of all." Id. at 622.[9]

---

among non-physicians. These hearings generally last fifteen (15) minutes and are conducted without any substantive discovery and without testimony at the hearings.

[9] Additionally, it will be more difficult to settle this case if both sides are forced to litigate their claim in multiple venues. Moreover, all non-party witnesses will be inconvenienced by having to appear in different venues on the same issue.

Due to the numerous proceedings that will interfere with this Court's ability to issue full and final relief, the complexity of the allegations, the proof required to establish such allegations, and the *res judicata* implications, this Court is the best forum to litigate all issues pertaining to Defendants' claims for payment of unpaid bills. Allowing the same claims to be litigated in different venues would be detrimental to judicial economy, run grave risk of *res judicata*, and unduly harass and burden State Farm Mutual. As such, a temporary stay until the case at bar is fully litigated is the appropriate remedy.

Indeed, the Court in <u>Elzanaty</u>, considered each of these arguments above and held:

> There is no doubt that staying all pending and future arbitrations is the most economic result. **The outcome of this matter will guide the outcome of all related matters, including all related arbitration proceedings.** As the Plaintiffs contend, if Uptown [the medical provider] is found to be ineligible in this case, then Allstate prevails and all the arbitration matters whether pending or in the future will likely be moot. On the other hand, if Uptown is deemed eligible to receive No-Fault benefits, then Allstate's defense in all arbitration proceedings will be moot, and all arbitration proceedings will likely be resolved in the Defendants' favor. Thus a determination in this action would probably dispose of the main controversies in all of the arbitration proceedings.

<u>Elzanaty</u>, 929 F.Supp.2d at 217-218 (emphasis added). The Court added:

> As United States District Judge Jack B. Weinstein found, "[p]ermitting these individual claims to proceed to arbitration while their claim for a declaratory judgment remains pending in this court puts the plaintiffs at significant risk of multiple judgments that may be inconsistent with the ultimate decision in this case…[i]n the interest of judicial economy, arbitration of such unpaid claims is stayed pending a decision in the present case.

<u>Id.</u> <u>citing</u> <u>Liberty Mutual Insurance Co. v. Excel Imaging, P.C.</u>, 879 F.Supp.2d 243, 264 (E.D.N.Y. 2012).

### E. This Lawsuit Is the Most Appropriate Forum To Decide Global Issues In Dispute Between the Parties

The primary issue in this matter and each of the arbitrations and suits in state court is the same –whether the Defendants' bills are compensable. The instant matter, in which all the

claims have been aggregated, represents the best method for making this factual determination. As pled in the Complaint, when reviewed collectively, the pervasive patterns of fabricated patient findings, unnecessary treatment, testing, and durable medical equipment become apparent. Defendants, however, refuse to stay the arbitration and state court actions in order to shield the fact finder from these pervasive patterns.

When reviewing these claims collectively in this litigation, a fact finder, assisted by expert testimony, will understand how these patterns are not plausible and how they constitute fraud. Paragraphs 40 through 49 of the Complaint illustrate the global issues in this case. As detailed in the Complaint, the patterns in the medical records are "not credible and highly implausible as they appear across a wide range of patients for whom ages, pre-existing conditions, types of accident, mechanisms of injury, and a host of other important factors vary markedly." Based on these patient findings (and the purported need for care), the Defendants provided the same treatment, testing, and durable medical equipment to almost every patient. As noted in the Complaint, "this extensive combination of treatment purportedly administered by the Defendants to almost all patients would rarely be appropriate for any one patient's unique needs. Rather, the types of treatments, as well as the frequency and duration of the various treatments, should vary depending on the unique circumstances of each patient, including, but not limited to: (a) the patient's age, social, family and medical history; (b) the patient's physical condition, limitations, and abilities; (c) the location, nature, and severity of the patient's injury and symptoms; and (d) the patient's response to treatment."

Not only is this Court the most appropriate venue to decide the global issues presented in State Farm Mutual's claims and in defending the Counterclaim allegations, but the outcome of this matter should determine the outcome of all related matters. If Defendants succeed on their

Counterclaim, the arbitrations and state court suits will be moot as they cannot recover twice on the same claims. "A stay of one action pending the outcome of another is appropriate only where the decision in one will determine all the questions in the other, and where the judgment in one trial will dispose of the controversy in both actions..." See Somoza v. Pechnick, 3 A.D.3d 394, 2004 N.Y. Slip Op. 00213.

F. **Defendants Will Suffer No Harm Should the Matters Be Stayed**

As discussed above, State Farm Mutual will suffer irreparable harm should the arbitrations and state court suits be allowed to continue. In stark contrast, Defendants will not suffer any harm should the arbitrations and state court suits be temporarily stayed. These claims are already asserted in the Counterclaim and regardless of the venue, Defendants will benefit from the specific statutory language allowing for collection of interest at a rate of two percent (2%) every month the payments are overdue. See 11 NYCRR 65-3.9(a); Elzanaty, 929 F.Supp.2d at 222. Additionally, as the Court noted in Auto One Ins. Co. v. Manhattan Heights Medical, P.C., the issuance of an injunction "will not cause unduly hardship to any of the defendants, but, to the contrary, all parties will benefit from having the issue... determined in one action." Id. at *3. The Elzanaty Court further stated:

> [T]he Court sees no reason why the right to an arbitration forum means that this right must be immediate. The contractual agreement to arbitrate can be fulfilled, even if it is deferred in light of the issuance of a temporary stay.

Elzanaty, 929 F.Supp.2d at 217.[10]

---

[10] As noted above, by not agreeing to a stay, the Defendants only hurt themselves if they later choose to try and resolve this matter as any spent resources in defending arbitrations and state court suits have to be considered in reaching a fair resolution.

Ultimately, when weighed against the irreparable harm to State Farm Mutual and lack of harm to the Defendants, along with the waste in resources, the balance of hardships clearly favor State Farm Mutual's request for relief.

### G.    **State Farm Mutual Has Demonstrated Sufficiently Serious Questions Going to the Merits to Make Them Fair Ground for Litigation**

As discussed above, State Farm Mutual's lawsuit asserts claims for common law fraud and related causes of action due to Defendants' scheme to submit false and fabricated bills and medical records, and supporting documentation to Plaintiff in order to induce payments that Defendants were not entitled to. Defendants established pre-determined treatment protocols in order to maximize reimbursement by billing for an extensive list of unnecessary and excessive treatment, testing, and equipment purportedly provided to persons who were involved in motor vehicle accidents. Defendants' fraudulent patterns appear throughout all of the records and bills submitted by the Defendants.

The Second Circuit has held that to make out a common law fraud claim in New York, a plaintiff must plead and prove the following: (1) the defendants made a misrepresentation or omission of material fact; (2) the misrepresentations and/or omissions were made with the intent to deceive; (3) the plaintiff justifiably relied on the misrepresentations and/or omissions; and (4) the plaintiff's injury was caused by the misrepresentations and/or omissions. See Turtur v. Rothschild Registry International, 26 F.3d 304, 310 (2d Cir. 1994).

As to the first prong, the material misrepresentations include all of the medical records, bills and records from the Defendants, which documented false injuries and treatment, testing, and equipment that had no medical benefit. Next, State Farm Mutual, when paying these bills, relied on the supporting documentation, to their detriment and was injured as a result. Next,

18

Defendants had the fraudulent intent, including the motive and opportunity, to commit fraud. Finally, State Farm Mutual suffered substantive damages as a result of Defendants' scheme.

Based upon the above as well as State Farm Mutual's Complaint and supporting exhibits, there is sufficient evidence, pled with sufficient particularly, to raise "sufficiently serious questions going to the merits" with respect to its claims of common law fraud, unjust enrichment, conspiracy to commit fraud, and aiding and abetting fraud to make them a fair ground for litigation.[11] Just like in Bruce, Elzanaty, Damien, and Excel Imaging, State Farm Mutual has demonstrated that the issues raised are "so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus more deliberate investigation." United Transp. Union, General Committee of Adjustment 505 v. Long Island R. Co., 1981 WL 2244, at *3 (E.D.N.Y. Oct. 16, 1981) citing Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953).

---

[11] The Court need not decide the ultimate issue in the case at this time, only conclude that State Farm Mutual's averments raise a sufficiently serious question to be fair ground for litigation. See Nature's Bounty, Inc. v. Superx Drugs Corp., 490 F.Supp. 50, 54 (E.D.N.Y. 1980).

## IV.   CONCLUSION

For all of the foregoing reason, State Farm Mutual respectfully requests that this Court enter (1) an order temporarily staying the matters pending in New York State court and in arbitrations as identified in Exhibit A and Exhibit B respectively and (2) an order temporarily enjoining the Defendants from filing arbitration and state court matters until the resolution of the instant litigation.

Respectfully submitted,

**GOLDBERG, MILLER & RUBIN, P.C.**

BY:      /s/
MATTHEW MORONEY, ESQUIRE (mm6572)
767 Third Avenue
24th Floor
New York, NY 10017
646-863-1531
*Counsel for Plaintiff*
*State Farm Mutual Automobile Insurance Company*

DATED: March 6, 2017