# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

STATE FARM MUTUAL AUTOMOBILE     :
INSURANCE COMPANY     :
     :         **CIVIL ACTION:**
         **Plaintiff**     :         **Docket No.: 1:16-cv-04948**
     :
     **vs.**     :
     :
**JAMAICA WELLNESS MEDICAL, P.C.,**     :
**BRIJ MITTAL, M.D., MARC LAMPA, D.C.,**     :
**UNITED WELLNESS CHIROPRACTIC,**     :
**P.C., GREGORY MILLER a/k/a GREGORI**     :
**MICKILWSKI, DAILY MEDICAL**     :
**EQUIPMENT DISTRIBUTION CENTER,**     :
**INC., LIDA'S MEDICAL SUPPLY, INC.,**     :
**and DAVID SAFIR**     :
     :
         **Defendants**     :
     :

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S MOTION FOR A DEFAULT JUDGMENT PURSUANT TO FED. R. CIV. P.55 AGAINST DEFENDANTS, LIDA'S MEDICAL SUPPLY, INC., DAILY MEDICAL EQUIPMENT DISTRIBUTION CENTER, INC. AND GREG MILLER a/k/a GREGORI MICKILWSKI

# <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION...................................................................................................1
II.     FACTUAL BACKGROUND.................................................................................2
III.    PROCEDURAL HISTORY....................................................................................5
IV.     STANDARD OF REVIEW....................................................................................7
V.      ARGUMENT..........................................................................................................9

        A.  Defaulting Defendants Have Failed To Plead or Otherwise Defend Against The
            Action..........................................................................................................9

        B.  Defaulting Defendants Have Admitted The Factual Allegations Of Plaintiff's
            Complaint.....................................................................................................9

                1.      The Defaults Were
                        Willful..................................................................................9

                2.      The Defaulting Defendants Do Not Have Any Meritorious
                        Defenses...............................................................................10

                3.      Plaintiff Will Suffer Substantial Prejudice if A Default Judgment Is Not
                        Entered Against the Defaulting
                        Defendants............................................................................11

        C.  The Complaint Sets Forth Valid Claims For Relief....................................12

                1.      Plaintiff's Complaint States Valid Common Law Fraud
                        Claims..................................................................................13

                2.      Plaintiff's Complaint States a Valid Claim for Aiding and Abetting
                        Fraud…………………………………………………….......17

                3.      Plaintiff's Complaint States a Valid Unjust Enrichment Claim...............18

                4.      Plaintiff is Entitled to Declaratory Relief……………………………19

        D.  Plaintiff Is Entitled To Prejudgment Interest On Their Claims...................20

    VI.     CONCLUSION…………………………………………………..……21

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Ainbinder v. Money Ctr. Fin. Grp., Inc.,* 2013 WL 1335997 (E.D.N.Y. Feb. 28, 2013), report and
   recommendation adopted, *Ainbinder v. Money Ctr.* Fin. Group, Inc., 2013 WL 1335893
   (E.D.NY. Mar. 25, 2013)…………………………........................................................................7

*AIU Insurance Co. v. Omecs Med. Supply, Inc.,* 2005 U.S. Dist. LEXIS 2966 (E.D.N.Y.
   2005)........................................................................................................................................16

*Allstate Ins. Co. v. Abutova,* 2017 WL 1185222 (E.D.N.Y. Feb. 15, 2017), report and
   recommendation adopted, 13CV3494ARRLB, 2017 WL 1184107 (E.D.N.Y. Mar. 29,
   2017)…………………………………………………………………………...........18

*Allstate Ins. Co. v. Aminov,* 2014 WL 527834 (E.D.N.Y. Feb. 7, 2014)…......7, 13, 17, 18, 20, 21

*Allstate Ins. Co. v. Lyons,* 843 F.Supp.2d 358, 374-75 (E.D.N.Y. 2012)……………………14, 16

*Allstate Ins. Co. v. Nazarov,* 2015 WL 5774459 (E.D.N.Y. Sept. 30, 2015) ……………….......15

*Au Bon Pain Corp v. Artect, Inc.*, 653 F.2d 61 (2d. Cir. 1981)…………………………….......8

*AUSA Life Ins. Co. v. Ernst & Young,* 206 F.3d 202 (2d Cir. 2000) ……………………...........15

*AW Indus., Inc. v. Sleep Well Mattress, Inc.,* 07-CV-3969 SLT JMA, 2009 WL 485186
   (E.D.N.Y. Feb. 26, 2009) …………………………………………………………….....8

*Baumgartner v. Salzman,* 08-CV-2582 JS AKT, 2009 WL 2998958 (E.D.N.Y. Sept. 10, 2009)...7

*Boards of Trustees of Ins., Annuity, & Apprenticeship Training Funds of Sheetmetal Workers'
   Int'l Ass'n, Local Union No. 137 v. Frank Torrone & Sons, Inc.,* 2014 WL 674098 (E.D.N.Y.
   Feb. 3, 2014) ………………………………………………………....................................7

*Bounty Fresh, LLC v. J N.Y. Produce, Inc.,* 2014 WL 1010833 (E.D.N.Y.)..............................12

*Cablevision Sys New York Corp. v. Abramov,* 980 F. Supp. 107 (E.D.N.Y. 1997)…………...8, 17

*Circuito Cerrado, Inc. v. Morgalo Corp.,* 2011 WL 3919411 (E.D.N.Y. July 29, 2011), report
   and recommendation adopted,  2011 WL 3919679 (E.D.N.Y. Sept. 7,
   2011)…………………………………………………………....................................................8

*County of Suffolk v. Amerada Hess Corp.,* 447 F. Supp. 2d 289, 297 (S.D.N.Y.2006)…….....18

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42 (2d Cir. 2011)……........……..18
.
*Donogue v. MIRACOR Diag.,* 2002 WL 233188 (S.D.N.Y. Feb. 11, 2002)...............................20

*Empire State Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Tr., Lab. Mgt.
Cooperation and Scholarship Funds v. Darken,* CV 11-46 JS AKT,        2012 WL 194075,
(E.D.N.Y. Jan. 17, 2012), report and recommendation adopted sub nom. *Trustees of Empire
State Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Tr., Lab. Mgt.
Cooperation and Scholarship Funds v. Darken Architectural Wood*, 11-CV-0046 JS AKT,
2012 WL 832452 (E.D.N.Y. Mar. 12, 2012)…………………………………………...........10

*Feel Better Kids, Inc. v. Kids in Need, Inc.,* 2012 WL 4483000 (E.D.N.Y.), report and
recommendation adopted, 2012 WL 4483874 (E.D.N.Y. Sept. 27, 2012)…………..…………10

*Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009)…………………………………………...12

*Gesualdi v. Magnolia Pro Trucking Inc.*, CV 11-4082 ADS AKT, 2012 WL 4036119 (E.D.N.Y.
Aug. 20, 2012), report and recommendation adopted sub nom. *Gesualdi v. Magnolia P R O
Trucking Inc.*, 2012 WL 4035779 (E.D.N.Y. Sept. 11, 2012)…………......................................10

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155 (2d Cir. 1992)………....8

*Gov't Employees Ins. Co. v. AMD Chiropractic, P.C.*, 2013 WL 5131057 (E.D.N.Y. Sept. 12,
2013)…………………………………………………………………………………….......7

*Gov't Employees Ins. Co. v. Damien*, 2011 WL 5976071 (E.D.N.Y. Nov. 3, 2011), report and
recommendation adopted, 2011 WL 6000571 (E.D.N.Y. Nov. 29, 2010)...…………10, 11, 12, 16

*Gov't Employees Ins. Co. v. Gateva,* 2014 WL 1330846 (E.D.N.Y. Mar. 30, 2014), amended, No.
12-CV-4236 MKB, 2014 WL 1843291 (E.D.N.Y. May 8, 2014)
…………………………………………………………………………………………........16

*Gov't Employees Ins. Co. v. IAV Med. Supply, Inc.,* 2013 WL 764735, at *8-9 (E.D.N.Y. Feb. 8,
2013), report and recommendation adopted, 11-CV-4261 ARR RER, 2013 WL 765190
(E.D.N.Y. Feb. 28, 2013) …………………………………………………......................20, 21

*Gov't Employees Ins. Co. v. Infinity Health Prod., Ltd.,* 2012 WL 1427796, at *1 (E.D.N.Y. Apr.
6, 2012), report and recommendation adopted, No. 10-CV-5611 JG JMA, 2012 WL 1432213
(E.D.N.Y. Apr. 25, 2012)…………………………………...........................…11, 15, 20, 21

*In re Crazy Eddie Sec. Litig.,* 948 F. Supp. 1154 (E.D.N.Y. 1996)………………………………10

*JP Morgan Chase Bank v. Winnick,* 406 F.Supp.2d 247 (S.D.N.Y.2005)………………….…...17

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006) ………………………………...……15, 17

*Mack Fin. Servs. v. Poczatek,* 2011 WL 4628695 (E.D.N.Y. Aug. 30, 2011), report and
recommendation adopted in part, 2011 WL 4628692 (E.D.N.Y. Sept. 30,
2011)…………………………………………………………………………………........11

iv

*Maryland Casualty Co. v. Rosen*, 445 F.2d 1012 (2d Cir. 1971)……………………………..19

*Mason Tenders Dist. Council v. Duce Constr. Corp.,* 2003 WL 1960584 (S.D.N.Y.)………….12

*Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.,* 500 F.3d 171 (2d.Cir. 2007) …………….16

*Metro. Coal Co. v. Howard*, 155 F.2d 780 (2d Cir. 1946)……………….....………………......16

*Mfrs. Hanover Trust Co. v. Chem. Bank,* 160 A.D.2d 113 (1st Dep't 1990) …………...……18

*Ravo v. Rogatnick,* 70 N.Y.2d 305, 520 N.Y.S.2d 533, 514 N.E.2d 1104 (1987)………………17

*Rodriguez v. Almighty Cleaning, Inc.,* 784 F. Supp. 2d 114 (E.D.N.Y. 2011) …………………..7

*Schlaifer Nance & Co. v. Estate of Warhol,* 119 F.3d 91 (2d Cir. 1997)…………………..........12

*S.E.C. v. McNulty,* 137 F.3d 732 (2d Cir. 1998)…………………………………….………..7, 10

*Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124 (2d Cir. 1994)……………………………...15

*State Farm Mut. Auto. Ins. Co. v. Cohan,* 2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009)....8, 17

*State Farm Mut. Auto. Ins. Co. v. Cohan,* 2010 WL 890975 (E.D.N.Y. Mar. 8, 2010) *aff'd*, 409 F. App'x 453 (2d Cir. 2011)…….........…………………………………………………………20

*State Farm Mut. Auto. Ins. Co. v. Grafman,* 655 F. Supp. 2d 212 (E.D.N.Y. 2009)....................13

*State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.,* 589 F.Supp.2d 221 (E.D.N.Y. 2008) …………………………………………………………………….………15, 16

*State Farm Mut. Auto. Ins. Co. v. Kalika,* 2006 WL 6176157 (E.D.N.Y.)…………...…….…14

*State Farm Mut. Auto. Ins. Co. v. Rabiner,* 749 F. Supp. 2d 94 (E.D.N.Y. 2010)…...………….18

*Steinberg v. Sherman,* 2008 WL 1968297 (S.D.N.Y. May 2, 2008)…………..............................20

*Swarna v. Al–Awadi,*  622 F.3d 123 (2d Cir. 2010)……………………………………..........7

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105 (2d Cir. 1997)..8

*United States v. Barrett*, 178 F.3d 643, 648 (2d Cir. 1999)…………………………..………..16

*United States v. Regent Office Supply Co.,* 421 F.2d 1174 (2d Cir. 1970)…………………….15

*United States v. RW Prof. Leasing Servs. Corp.*, 452 F. Supp. 2d 159, 173 (E.D.N.Y. 2006)..15, 16

*United Air Lines, Inc. v. United Airways, Ltd.,* 2013 WL 1290930 (E.D.N.Y. Mar. 4, 2013), *report and recommendation adopted,* 2013 WL 1290916 (E.D.N.Y. Mar. 28, 2013)..............................11

*United States v. Williams,* 2012 WL 170106 (E.D.N.Y. Jan. 19, 2012)……………….................7

**Statutes**

28 U.S.C. § 2201……………………………………………………………………….......19

**Rules**

Fed. R. Civ. P. 4 ………………………………………………………………...…...6

Fed. R. Civ. P. 55……………………………………………………………7, 9

**Regulations**

N.Y. C.P.L.R. 308……………………………………………………………..6

N.Y. C.P.L.R. 5001…………………………………………………………20

I.     **INTRODUCTION**

Plaintiff, State Farm Mutual Automobile Insurance Company (hereinafter, "State Farm Mutual" or "Plaintiff"), respectfully submits this memorandum of law in support of their application for entry of a default judgment pursuant to Rules 55.1 and 55.2(a) of the Local Federal Rules for the Eastern District of New York and Rule 55(b) of the Federal Rules of Civil Procedure against Defendants, Lida's Medical Supply, Inc. ("Lida's Medical"), Daily Medical Equipment Distribution Center, Inc. ("Daily Medical Equipment") and Greg Miller a/k/a Gregori Mickilwski ("Miller") (hereinafter collectively "Defaulting Defendants"), for their failure to answer or otherwise defend against the above captioned action.

Since November 2016, the Defaulting Defendants failed to answer and have failed to participate at all in this litigation.  Defaults were entered on December 22, 2016.  Given the Second Circuit's standard of deeming default judgment appropriate when a defendant's default is willful, when the defendant lacks a meritorious defense and when the plaintiff would suffer prejudice if a default judgment is not granted, it is respectfully submitted that default judgment should be entered here against the Defaulting Defendants.

As a threshold matter, there is no doubt that the defaults were willful.  In the Second Circuit, when a defendant fails to respond to a properly served summons and complaint, as is the case here, such conduct is deemed willful for the purposes of default judgment.  Second, as a matter of law, when no answer is served, a meritorious defense cannot be established.  Third, because Plaintiff has expended considerable resources litigating this matter, reaching settlements with Defendants, Dr. Brij Mittal and Jamaica Wellness Medical, and obtaining defaults against the Defaulting Defendants, Plaintiff would be without recourse to seek relief from the Defaulting Defendants if the instant application was denied, and therefore, would suffer substantial prejudice.

Moreover, by virtue of Defaulting Defendants' failure to appear in this action, Plaintiffs' allegations as set forth in the Complaint must be accepted as true, and because the Complaint sets forth detailed allegations establishing the Defaulting Defendants' liability, it is respectfully submitted that the only real issue before the Court is the amount of damages owed to Plaintiff.  To that end, Plaintiff has submitted evidence, in the form of an affidavit, detailing the compensatory damages.

## II.      FACTUAL BACKGROUND

In this action, State Farm Mutual seeks to recover money that the Defendants, including the Defaulting Defendants, defrauded from it through the submission of fraudulent bills and records.  *(A true and accurate copy of Plaintiff's Complaint is attached hereto as Exhibit "A").* This action also seeks declaratory relief to prevent the Defendants from recovering any unpaid bills submitted to State Farm Mutual.  As described more fully in the Complaint, the Defendants ostensibly provided treatment, testing, and durable medical equipment to individuals who were involved in motor vehicle accidents and eligible for no-fault benefits through insurance companies like State Farm Mutual.  *Complaint at ¶ 2.*  In reality, the Defendants' scheme was designed to maximize insurance reimbursement through the submission of fraudulent bills and records.  *Id.* When reviewed collectively, the patient records reveal pervasive patterns of fabricated patient injuries, unnecessary treatment, testing, and durable medical equipment.  *Complaint at ¶¶ 38-69.* The patterns in the medical records are "not credible and highly implausible as they appear across a wide range of patients for whom ages, pre-existing conditions, types of accidents, mechanisms of injury, and a number of other important factors vary markedly."  *Complaint at ¶ 44.*

The first step in the scheme was to create fraudulent patient records to support the purported need for treatment, testing, and durable medical equipment.  *Complaint at ¶ 39-46.*  Regardless of

2

the patient's actual complaints, physical findings and injuries, Defendants Dr. Mittal and Dr. Lampa documented fraudulent physical findings, diagnoses and injuries for each patient. *Id.* The patterns in these records are not credible and highly implausible as they appear across a wide range patients for whom ages, pre-existing conditions, types of accident, mechanisms of injury, and a host of other important factors vary markedly. ***Complaint at ¶ 44-45.*** The Complaint details these patterns with illustrative examples for each Defendant. *Id.* Not only is it impossible for all of these patterns to appear in a patient population of legitimate healthcare providers, but these non-credible and implausible findings were not documented to reflect legitimate and actual patient conditions. Rather, they were documented in a pre-determined manner to support the purported need for treatment, testing, and equipment that was billed for by the Defendants. ***Complaint at ¶ 39-46.***

Based on these fraudulent patient findings (and the purported need for care), the Defendants provided the same unnecessary treatment, testing, and durable medical equipment to almost every patient. ***Complaint at ¶¶ 39-41.*** This extensive combination of treatment and durable medical equipment purportedly provided to almost all patients - to the extent it was actually provided - would rarely be appropriate for any one patient's unique needs. *Id.* at *¶ 49.* Rather, in a legitimate healthcare setting, the types of treatments, as well as the frequency and duration of the various treatments, should vary depending on the unique circumstances of each patient, including, but not limited to: (a) the patient's age, social, family and medical history; (b) the patient's physical condition, limitations, and abilities; (c) the location, nature, and severity of the patient's injury and symptoms; and (d) the patient's response to treatment. *Id.* at *¶ 49.*

Nearly every patient received the same unnecessary and excessive physical therapy modalities, the same unnecessary and excessive chiropractic services, and the same unnecessary

3

and excessive acupuncture services. ***Complaint at ¶ 46-49.***[1]   The Defendants provided these services without modification, even though the patient records fail to reflect any significant and/or credible patient benefit and/or improvement.  *Id*.  In sum, the Defendants purportedly provided these services pursuant to pre-determined protocols that maximized billing reimbursement, rather than for legitimate patient needs.[2]

The fraud scheme included medically unnecessary durable medical equipment that was purportedly dispensed to almost every patient by the Defaulting Defendants.  ***Complaint at ¶¶ 38, 46, 47, 61-63 and Exhibit "D"***.  As alleged in the Complaint, "these non-credible and highly implausible findings, diagnoses, and injuries records were pre-determined and were not documented to reflect the patients' actual conditions.  Rather, they were documented to support the purported need for treatment, testing, *equipment,* and other services."  ***Complaint at ¶ 45***. (emphasis added).

All of this unnecessary durable medical equipment was exclusively provided by Daily Medical Equipment and Lida's Medical.  *Id*. at ***¶¶ 46-39***.  Lida's Medical is a mere continuation of Daily Medical Equipment, as the two entities share the same exact delivery receipt, address, telephone number, and facsimile number.  In late 2014, Lida's Medical replaced Daily Medical Equipment as the provider of this equipment.  Mr. Miller owned and operated Daily Medical Equipment and, since the Complaint further alleges, he may own or operate Lida's Medical.  *Id*. at ***¶ 14***.  Since Miller defaulted, this allegation is deemed admitted.

---

[1] The treatment allegedly provided to each patient is documented in the summary charts appended as exhibits to the Complaint.

[2] In addition to the fraudulent physical therapy, chiropractic and acupuncture services, the Defendants also included unnecessary testing as part of the pre-determined protocol treatment.  This fraudulent testing included computerized range of motion and muscle testing, outcome assessment testing, physical capacity testing, along with biofeedback.  This fraudulent testing is further described in paragraphs 53-60 of the Complaint.  This combination of tests purportedly ordered and/or administered by the Defendants to almost all patients was not appropriate for the patients' unique needs.  *Id*.

Daily Medical Equipment and later Lida's Medical were allowed to exclusively bill for this unnecessary durable medical equipment because they agreed to participate in the scheme described in the Complaint.  *Id.* at *¶¶ 38, 61-63.*  Pursuant to the agreements with the other Defendants, the Defaulting Defendants were allowed to bill for <u>ten (10) pieces</u> or more of durable medical equipment, with some patients purportedly receiving <u>fifteen (15) pieces</u>.  ***See Exhibit "D" to the Complaint.***  In fact, the patients were illogically given both a bed board (to make a firm sleeping surface) and an egg crate mattress (to soften the sleeping surface).  The Defaulting Defendants knew that the scheme involved billing multiple pieces of unnecessary durable medical equipment for every patient.  ***Complaint at ¶¶ 61-63.***  The Defaulting Defendants were allowed to share the patients at the clinic and bill for numerous pieces of unnecessary durable medical equipment by virtue of the financial relationship with the co-Defendants and their agreement to implement the scheme at the clinic.  ***Complaint at ¶ 38.***

## III.   PROCEDURAL HISTORY

State Farm Mutual commenced this lawsuit on September 6, 2016 against Jamaica Wellness Medical, P.C., Brij Mittal, M.D., Marc Lampa, D.C., United Wellness Chiropractic, P.C., David Safir, Miller, Daily Medical Equipment and Lida's Medical, seeking damages for: (1) common law fraud; (2) unjust enrichment; (3) conspiracy to commit fraud; and (4) aiding and abetting fraud.

State Farm Mutual and Defendants, Dr. Mittal and Jamaica Wellness Medical reached a settlement agreement.  The case remains active as to Defendants Mr. Safir, Dr. Lampa, and United Wellness Chiropractic. However, Defendants Lida's Medical, Daily Medical Equipment and Miller have not participated in this lawsuit and, therefore, defaults were entered over fifteen (15) months ago against them.

5

On or about October 12, 2016, pursuant to Fed. R. Civ. P. 4(e), Plaintiff served its Complaint upon Defaulting Defendant Lida's Medical and Miller. (*True and accurate copies of the affidavits of service (Docket No. 9) are attached hereto as Exhibits "B" and "C").* On or about November 3, 2016, pursuant to Fed. R. Civ. P. 4(e), Plaintiff served its Complaint upon Defaulting Defendant Daily Medical Equipment. *(A true and accurate copy of the affidavit of service (Docket No. 11) is attached hereto as Exhibit "D").*[3] The Defaulting Defendants were required to serve an answer or otherwise appear within twenty-one (21) days of service of the Complaint. The Defaulting Defendants failed to answer or otherwise move with respect to the Complaint and have failed to appear or otherwise defend against the action.

On December 16, 2016, a Certificate of Default and an Affidavit in Support of Certificate of Default were filed by Plaintiff for each Defaulting Defendant with the Court. *(True and accurate copies of the Certificates (Docket Nos. 13, 14, and 15) are attached hereto as Exhibit "E").* On December 22, 2016, the Clerk of the United States District Court, Eastern District of New York, certified that Defaulting Defendants Miller, Lida's Medical, and Daily Medical Equipment had not filed answers or otherwise moved with respect to the Complaint and noted their default. *(True and accurate copies of the Clerk's Certificates of Entry of Default (Docket Nos. 16, 17, and 20) are attached hereto as Exhibit "F")*. Plaintiff then forwarded the Entry of Default on the Defaulting Defendants. *(A true and accurate copy of counsel's letter to the Defaulting Defendants with enclosures is attached as Exhibit "G").*

---

[3] As indicated in the affidavits of service attached to the Motion, Plaintiff served all corporate Defaulting Defendants in accordance with Fed. R. Civ. P. 4(h) by serving copies of the Summons in a Civil Action, Complaint, and Exhibits upon a person and/or authorized agent of each corporate Defaulting Defendant. *See Exhibits "B" and "D".* Similarly, Plaintiff served Defendant Miller in accordance with Fed. R. Civ. P. 4(e) and N.Y. C.P.L.R. 308 by serving copies of the Summons in a Civil Action, Complaint, and Exhibits to a person of suitable age and discretion at the actual place of business of Miller and mailing copies of the same to his actual place of business by First Class Mail bearing the legend "personal and confidential." *See Exhibit "C".*

## IV.   <u>STANDARD OF REVIEW</u>

Fed. R. Civ. P. 55(a) provides for entry of a default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Rule 55 sets forth a two-step process that first requires the entry of default by the Clerk of Court, and then entry of a default judgment, which is the final action in the case. *See Allstate Ins. Co. v. Aminov*, 2014 WL 527834, at *4 (E.D.N.Y. Feb. 7, 2014) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  After a default has been entered against a party and the party fails to appear or otherwise move to set aside the default judgment pursuant to Fed. R. Civ. P. 55(c), a default judgment may be entered pursuant to Fed. R. Civ. P. 55(b). *Id.*  Furthermore, when a default is entered, the defaulting party's failure to defend constitutes an admission of all well-pleaded factual allegations set forth in the complaint. *See Gov't Employees Ins. Co. v. AMD Chiropractic, P.C.*, 2013 WL 5131057, at *3 (E.D.N.Y. Sept. 12, 2013); *United States v. Williams,* 2012 WL 170106, at *1-2 (E.D.N.Y. Jan. 19, 2012).

In deciding motions for default, the courts consider (1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *See Boards of Trustees of Ins., Annuity, & Apprenticeship Training Funds of Sheetmetal Workers' Int'l Ass'n, Local Union No. 137 v. Frank Torrone & Sons, Inc.*, 2014 WL 674098 (E.D.N.Y.) (citing *Swarna v. Al–Awadi,* 622 F.3d 123, 142 (2d Cir. 2010)); *Ainbinder v. Money Ctr. Fin. Grp., Inc.*, 2013 WL 1335997 at *4 (E.D.N.Y.), *report and recommendation adopted, Ainbinder v. Money Ctr. Fin. Group, Inc.*, 2013 WL 1335893 (E.D.NY. Mar. 25, 2013); *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998); *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011); *Baumgartner v. Salzman*, 2009 WL 2998958 (E.D.N.Y.). Applying the

foregoing three factors to the present case, Plaintiff respectfully submits that default judgment should be entered against the Defaulting Defendants.

With respect to damages, the movant must prove that the damages sought relate to and flow from the injuries pleaded. *See Circuito Cerrado, Inc. v. Morgalo Corp.,* No. CV 10-3338 JS AKT, 2011 WL 3919411, at \*4 (E.D.N.Y. July 29, 2011), *report and recommendation adopted*, No. 10-CV-3338 JS AKT, 2011 WL 3919679 (E.D.N.Y. Sept. 7, 2011). The moving party need only prove *"*that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Id.* (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992)). Moreover, the *"*moving party is entitled to all reasonable inferences from the evidence it offers. *Id.* (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 64 (2d Cir. 1981)). Additionally, *State Farm Mut. Auto. Ins. Co. v. Cohan*, 2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009), "a default 'effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged.'" *Id.* At \*9-10 (*quoting Cablevision Sys New York Corp. v. Abramov*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997)).

In some cases, the Court may find it appropriate to conduct a hearing in order to determine the amount of damages. *Id.* However, the Second Circuit has long held that a hearing is not required where there is a basis for the damages sought such as detailed affidavits and/or other documentary evidence. *See AW Indus., Inc. v. Sleep Well Mattress, Inc.*, 07-CV-3969 SLT JMA, 2009 WL 485186, at \*3 (E.D.N.Y. Feb. 26, 2009) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)).

## V.   ARGUMENT

### A.  THE DEFAULTING DEFENDANTS HAVE FAILED TO PLEAD OR OTHERWISE DEFEND AGAINST THE ACTION

Fed. R. Civ. P. 55(a) provides for the entry of default when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend against the action. After a default has been entered against a party and if that party fails to appear or otherwise move to set aside the default pursuant to Fed. R. Civ. P. 55(c), the court may issue a default judgment. In the present case, notwithstanding that the Complaint in the instant matter was served upon the Defaulting Defendants, they all have failed to either appear, answer, or defend against the action.

As required by the Local Rules of the Eastern District of New York, Plaintiff requested that the Clerk of the Court enter a default, certifying that that the Defaulting Defendants had not filed an answer or otherwise defended against the Complaint, which the Clerk of the Court did. By obtaining the entry of default, Plaintiff satisfied the first of the two-step process required for obtaining a default judgment against the Defaulting Defendants.

### B.  DEFAULTING DEFENDANTS HAVE ADMITTED THE FACTUAL ALLEGATIONS OF PLAINTIFF'S COMPLAINT.

In determining whether to grant a default judgment, the Court should consider (1) whether the defendant's default was willful, (2) whether the defendant has a meritorious defense to the plaintiff's claims, and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. When applying the foregoing three factors to the matter at bar, it is respectfully submitted that default judgment should be entered against the Defaulting Defendants.

#### 1.  The Defaults Were Willful

First, there is no doubt that Defendants' defaults were willful. The Second Circuit has interpreted "willfulness" in the context of a default as conduct that is more than merely negligent

9

or careless. *McNulty,* 137 F.3d at 738.  When, as here, defendants are properly served with a summons and complaint and fail to respond, their conduct is deemed willful for the purposes of default judgment. *Id.; See, e.g., Gesualdi v. Magnolia Pro Trucking Inc.*, 2012 WL 4036119, at *3 (E.D.N.Y. Aug. 20, 2012), *report and recommendation adopted sub nom. Gesualdi v. Magnolia PRO Trucking Inc.*, 2012 WL 4035779 (E.D.N.Y.) (defendants' failure to respond to the complaint adequately shows willfulness) (citation omitted); *see also Feel Better Kids, Inc. v. Kids in Need, Inc.*, 2012 WL 4483000, at *4 (E.D.N.Y.), *report and recommendation adopted*, 2012 WL 4483874 (E.D.N.Y. Sept. 27, 2012) (unexplained failure to answer complaint typically sufficient to demonstrate willfulness) (citations omitted); *Gov't Employees Ins. Co. v. Damien*, 2011 WL 5976071, at *3 (E.D.N.Y. Nov. 3, 2011), *report and recommendation adopted*, 2011 WL 6000571 (E.D.N.Y. Nov. 29, 2010) (proper service of summons and complaint coupled with failure to respond supports a conclusion that default was willful).

As described above, the Defaulting Defendants were properly served, and therefore, there is no dispute that they willfully failed to respond to the Complaint by failing to answer or otherwise participate in this lawsuit.  It also should be noted that the Defaulting Defendants are represented by the Law Offices of Melissa Betancourt (counsel of record in this action) in various state court matters involving Plaintiff.  Nonetheless, the Defaulting Defendants have refused to litigate this lawsuit.

### 2.   The Defaulting Defendants Do Not Have Any Meritorious Defenses

The second factor for the Court to consider in determining if default judgment is appropriate is whether the Defendants have a meritorious defense. In that regard, when a defendant fails to answer the complaint, a meritorious defense cannot be established. *See, e.g.*, *Empire State Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Trust, Labor Mgmt. Cooperation*

10

& *Scholarship Funds v. Darken*, 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012), *report and recommendation adopted sub nom. Trustees of Empire State Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Trust, Labor Mgmt. Cooperation & Scholarship Funds v. Darken Arch. Wood*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012) (when no answer is filed, court is unable to make determination as to whether defendant has meritorious defense to Plaintiff's allegations, thus weighing in favor of granting default judgment); *Mack Fin. Servs. v. Poczatek*, 2011 WL 4628695 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted in part*, 2011 WL 4628692 (E.D.N.Y. Sept. 30, 2011) (same); *United Air Lines, Inc. v. United Airways, Ltd.,* 2013 WL 1290930, at *5 (E.D.N.Y. Mar. 4, 2013), *report and recommendation adopted,* 2013 WL 1290916 (E.D.N.Y. Mar. 28, 2013) (same); *see also Gov't Employees Ins. Co. v. Infinity Health Prod., Ltd.,* 2012 WL 1427796, at *1 (E.D.N.Y. Apr. 6, 2012), *report and recommendation adopted,* No. 10-CV-5611 JG JMA, 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012) (default judgment appropriate when defaulting defendants failed to present any defense); *Damien*, 2011 WL 5976071, at *3 (same). As noted herein, there is no question that the Defaulting Defendants were all properly served with the Complaint, and their failures to serve Answers establishes their lack of a meritorious defense for the purposes of default judgment.

### 3.  Plaintiff Will Suffer Substantial Prejudice if A Default Judgment Is Not Entered Against the Defaulting Defendants

Third, Plaintiff will suffer substantial prejudice if a default judgment is not entered against the Defaulting Defendants.  As a threshold matter, since Plaintiff has established that Defaulting Defendants' defaults were willful, and that Defaulting Defendants do not have any meritorious defenses, a strong showing of prejudice is not necessary. *See Bogoraz*, 2012 WL 1655552, at *6 (citing *Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 244 (2d Cir.1994)).  In any event, notwithstanding the low threshold for a showing of prejudice that Plaintiff is required to

meet, the facts demonstrate that Plaintiffs would indeed suffer substantial prejudice if default judgment were not entered against the Defaulting Defendants.

If the Court were to deny Plaintiff's application for Default Judgment, Plaintiff would be without recourse to seek the relief sought in the Complaint, as there are no additional steps available to secure relief in this Court. *See, e.g., United Air Lines, Inc.,* 2013 WL 1290930, at *5 (finding prejudice where the denial of a default judgment motion would leave plaintiffs without any additional recourse to secure relief through the Court).  Indeed, in light of the Defaulting Defendants' failure to respond, requiring Plaintiff to take any additional steps prior to a determination of this motion would be unfairly prejudicial to Plaintiffs. *See, e.g., Damien*, 2011 WL 5976071, at *3 (citing *Mason Tenders Dist. Council v. Duce Constr. Corp.,* 2003 WL 1960584, at *3 (S.D.N.Y.)).

## C. THE COMPLAINT SETS FORTH VALID CLAIMS FOR RELIEF

Having established that the Defaulting Defendants' defaults were willful, that they do not have any meritorious defenses, and that Plaintiff would be prejudiced if the instant motion were denied, the Court must determine if Plaintiff's allegations as set forth in the Complaint state valid claims. *See Bounty Fresh, LLC v. J N.Y. Produce, Inc.*, 2014 WL 1010833, at *2 (E.D.N.Y.) ("[w]ith respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action") (citing *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009)). It is respectfully submitted that they do.

### 1.   Plaintiff's Complaint States Valid Common Law Fraud Claims.

Under New York law, a plaintiff alleging fraud must state five elements: (i) a material misrepresentation; (ii) made by a defendant knowing that it was false when made; (iii) with the intent to defraud; (iv) upon which plaintiff reasonably relies; and (v) which causes plaintiff injury. *See Aminov*, 2014 WL 527834, at *5 (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)); *State Farm Mut. Auto. Ins. Co. v. Grafman,* 655 F. Supp. 2d 212, 220 (E.D.N.Y. 2009). Instantly, the Complaint meets the requirements for pleading fraud.  As described in the Complaint, the Defendants, Dr. Brij Mittal and Dr. Marc Lampa did not legitimately examine patients, but rather fabricated patient findings and injuries to purportedly justify the need for treatment, testing and durable medical equipment.

Based on these fraudulent patient findings (and the purported need for care), the Defendants provided the same treatment, testing, and durable medical equipment to almost every patient. *Complaint at ¶ 46.*  The extensive combination of treatment collectively provided by the Defendants would rarely be appropriate for any one patient's unique needs, let alone every patient. *Complaint at ¶ 49.*  The fraud scheme included medically unnecessary durable medical equipment that was purportedly dispensed to almost every patient by the Defaulting Defendants.  *Complaint at ¶¶ 38, 46, 47, 61-63 and Exhibit "D".*

All of this durable medical equipment was exclusively provided by Daily Medical Equipment and later Lida's Medical.  Id. at *¶¶ 46-39.*  Daily Medical Equipment and later Lida's Medical were allowed to bill for this unnecessary durable medical equipment because they agreed to participate in the scheme described in the Complaint.  *Id.* at *¶¶ 38, 61-63.*  Pursuant to the agreements with the other Defendants – including Mr. Safir, a layperson controlling the clinics - the Defaulting Defendants were allowed to bill for ten (10) pieces or more of durable medical

equipment, with some patients purportedly receiving <u>fifteen (15) pieces</u>. ***See Exhibit "D" to the***

***Complaint.***  In fact, the patients were illogically given both a bed board (to make a firm sleeping

surface) and an egg crate mattress (to soften the sleeping surface).  The Defaulting Defendants

knew that the scheme involved billing multiple pieces of unnecessary durable medical equipment

for every patient.  ***Complaint at ¶¶ 61-63.***  The Defaulting Defendants were allowed to share the

patients at the clinic and bill for numerous pieces of unnecessary durable medical equipment by

virtue of the financial relationship with the Co-Defendants and their agreement to implement the

scheme at the clinic.  ***Complaint at ¶ 38.***

The Complaint, along with the detailed summary charts appended as exhibits, sufficiently

alleges material misrepresentations made by the Defaulting Defendants.  As stated in *State Farm*

*Mut. Auto. Ins. Co. v. Kalika*, the Court held "plaintiff has alleged that it paid defendants for

unnecessary treatment, an allegation that must be accepted as true for purposes of determining a

motion to dismiss …" 2006 WL 6176157 (E.D.N.Y.).  Here, the Defaulting Defendants entered

into a fraud scheme, and in exchange, they were given the exclusive right to bill for numerous

pieces of durable medical equipment (upwards of 10-15 pieces of equipment), which they knew

were unnecessary.  To this end, Defaulting Defendants were supplied the fraudulent records of Dr.

Mittal and Dr. Lampa as support of their billing submissions, which were sent to Plaintiff.

In similar fraud based complaints brought by insurers, the Eastern District of New York,

the Second Circuit, and the other federal courts have universally held that these allegations, like

the ones in Plaintiffs' Complaint, are well pled and suffice the requirements of Federal Rules 8

and 9(b).  *See e.g., Allstate Ins. Co. v. Lyons,* 843 F.Supp.2d 358, 374-75 (E.D.N.Y. 2012) (finding

that the plaintiff sufficiently pleaded a material misrepresentation for a common law fraud claim

on the basis of its allegation "(1) that they were eligible to receive reimbursement under the no-

fault law [when in fact they were not eligible] and (2) that they were requesting reimbursement for services that were medically necessary and compensable [when in fact the services were not medically necessary]"); *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F.Supp.2d 221, 237 (E.D.N.Y. 2008) (recognizing a fraud claim based on alleged misrepresentations in billing for medically unnecessary tests and exaggerated level of services); *Allstate v. Nazarov*, 2015 WL 5774459 at *14 (E.D.N.Y. Sept. 30, 2015) ("Plaintiffs also submitted spreadsheets of examples of such fraudulent billing … Plaintiffs' specific allegations satisfy both the materials misrepresentation element of a New York common law fraud claim and the heightened pleading standards of Rule 9(b).").

Additionally, it is well-established that a defendant's intent to deceive, also known as scienter, may be shown by pleading facts that "give rise to a strong inference of fraudulent intent." *See Infinity Health Prod., Ltd.*, 2012 WL 1427796, at *5 (citing *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir.2006) ("strong inference of fraud" may be established by alleging facts that constitute strong evidence of conscious misbehavior)). Courts in this Circuit have held that "[w]hen it is clear that a scheme, viewed broadly, is necessarily going to injure, it can be presumed that the schemer had the requisite intent to defraud." *United States v. RW Prof. Leasing Servs. Corp.*, 452 F. Supp. 2d 159, 173 (E.D.N.Y. 2006) (quoting *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 220 (2d Cir. 2000) (citing *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1181 (2d Cir. 1970)). Moreover, the requisite strong inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 236-37 (E.D.N.Y. 2008) (quoting *Lerner*, 459 F.3d at 291 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128

15

(2d Cir.1994)); *see also RW Prof. Leasing Servs. Corp.*, 452 F. Supp. 2d at 173 (courts should "look at the entire circumstances of defendant's conduct as an indication of the requisite criminal intent") (quoting *United States v. Barrett*, 178 F.3d 643, 648 (2d Cir. 1999)).  Here, the Complaint alleges facts that give rise to a strong inference of fraudulent intent (e.g. agreeing to an exclusive arrangement with the other Defendants, Dr. Mittal, Dr. Lampa and David Safir to provide multiple pieces of unnecessary durable medical equipment (upwards of 10-15 pieces or more) to every patient – all part of a scheme to exhaust the $50,000.00 in no-fault benefits of these patients).

The Complaint also more than sufficiently sets forth Plaintiff's reliance on the misrepresentation and injury.  New York law provides that, when the misrepresentations are exclusively within the other party's knowledge, the wronged party may "rely on them without further investigation or sleuthing." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181-82 (2d.Cir. 2007) (citing *Metro. Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946) (Hand, J.)).  In the present case, the Complaint not only pleads actual reliance, it also pleads the factual basis for Plaintiff's reliance, thereby explaining why it was justifiable.  Specifically, the Complaint pleads facts demonstrating – among other things – that Plaintiff was under statutory and contractual obligations to process the Defaulting Defendants' claims, which forced Plaintiff to rely on the Defendants' facially-valid submissions.  In this context, courts regularly have found that insurers justifiably may rely on claims forms submitted in support of reimbursement under New York no-fault laws.  *See Gov't Employees Ins. Co. v. Gateva,* 2014 WL 1330846, at *12-13 (E.D.N.Y. Mar. 30, 2014), *amended*, 2014 WL 1843291 (E.D.N.Y. May 8, 2014); *Damien, supra,* 2001 U.S. Dist. LEXIS 13865, at * 11; *Lyons*, 843 F. Supp. 2d at 375; *Halima, supra* 2009 U.S. Dist. LEXIS 22443 at *24; *Liguori, supra*, 589 F. Supp. 2d at 227, 238); *AIU Insurance Co. v. Omecs Med. Supply, Inc.,* 2005 U.S. Dist. LEXIS 2966 at *45-47 (E.D.N.Y. 2005).

Finally, Plaintiff has established that the Defaulting Defendants' misrepresentations caused an injury.  As stated in *State Farm Mut. Auto. Ins. Co. v. Cohan*, 2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009), "a default 'effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged.'" *Id.* at *9-10 (*quoting Cablevision Sys New York Corp. v. Abramov*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997)).  Here, Plaintiff satisfied this element because the Complaint alleges it paid the Defaulting Defendants for unnecessary durable medical equipment.  But for the Defaulting Defendants' fraudulent submissions, Plaintiff would not have issued payments for the unnecessary equipment.  *See Aminov*, 2014 WL 527834, at *6 ("[plaintiff insurers] suffered an injury because they issued payments on behalf of their no-fault clients for procedures and prescriptions that were unnecessary or never provided").

### 2.  Plaintiff's Complaint States a Valid Claim for Aiding and Abetting Fraud

To establish liability for aiding and abetting fraud, a plaintiff must show "(1) the existence of a fraud; (2)[the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (*quoting JP Morgan Chase Bank v. Winnick,* 406 F.Supp.2d 247, 252 (S.D.N.Y.2005).  As described in the Complaint, Defendant Miller provided substantial assistance to the other Defendants to perpetuate the aforementioned scheme to defraud, for example, reaching an agreement to become the exclusive provider of durable medical equipment and billing for said unnecessary durable medical equipment.   Based on the foregoing, Plaintiff has sufficiently pled a claim for aiding and abetting fraud against it.  Miller, therefore, should be held jointly and severally liable for the damages (i.e. payments to Lida's Medical and Daily Medical).  *See County of Suffolk*

*v. Amerada Hess Corp.*, 447 F. Supp. 2d 289, 297 (S.D.N.Y. 2006); *Ravo v. Rogatnick*, 70 N.Y.2d 305, 520 N.Y.S.2d 533, 514 N.E.2d 1104 (1987).

### 3.   Plaintiff's Complaint States a Valid Claims for Unjust Enrichment

Under the unjust enrichment claims, Plaintiff is entitled to a judgment for the payments it made to the Defaulting Defendants.  "In order to succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover[.]"*Allstate Ins. Co. v. Abutova*, 2017 WL 1185222, at *7 (E.D.N.Y. Feb. 15, 2017), report and recommendation adopted, 2017 WL 1184107 (E.D.N.Y. Mar. 29, 2017) (*quoting Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011); *see also State Farm Mut. Auto. Ins. Co. v. Rabiner,* 749 F. Supp. 2d 94, 102 (E.D.N.Y. 2010) ("Unjust enrichment is an equitable principle, an obligation which the law creates, in the absence of any agreement, when and because acts of the parties or others have placed in the possession of one person money . . . under such circumstances that in equity and good conscience he ought not to retain it.") (*quoting Mfrs. Hanover Trust Co. v. Chem. Bank*, 160 A.D.2d 113, 117 (1st Dep't 1990)).

In *Allstate Ins. Co. V. Aminov*, the court found that Allstate had successfully pled sufficient facts for an unjust enrichment claim since the defaulting defendants received money from Allstate for the claims they submitted, Allstate suffered a detriment because the claim forms submitted by the defaulting defendants were fraudulent and should not have been filled, and third, equity and good conscience required that Allstate be reimbursed because "the defaulting defendants should not be rewarded for engaging in a scheme to fraudulently bill Allstate through the guise of filing prescriptions for Allstate's no-fault claimants." *Aminov*. 2014 WL 527834 at *7.

18

In this case, the Defaulting Defendants received money from Plaintiff for the claims submitted for durable medical equipment.  Plaintiff, therefore, suffered a detriment because the claims submitted were fraudulent and the durable medical equipment prescribed was not medically necessary.  Therefore, Plaintiff has pled the necessary elements for an unjust enrichment claim and should be reimbursed for the money paid to the Defaulting Defendants.

### 4.   Plaintiff is Entitled to Declaratory Relief

The Declaratory Judgment Act allows a court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought" when there is a case or actual controversy.  28 U.S.C. § 2201(a). Declaratory relief is appropriate: (i) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (ii) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.  *See Maryland Casualty Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971); E.R. Squibb & Sons, Inc. v. Lloyd's & Co., 241 F.3d 154, 175 (2d Cir. 2001).

Because the Defaulting Defendants have no right to receive payment for any bills for durable medical equipment that was not medically necessary and was ordered based on fraudulent and pre-determined patient findings, a declaratory judgment is appropriate.  The bills were submitted and there is an actual controversy.  Here, the *paid* portions of Defendants' bills are already at issue in this case in the existing damages counts.  The companion declaratory judgment count addresses the unpaid bills submitted by the Defaulting Defendants that are not compensable for the exact same reasons that Plaintiffs are entitled to damages.  Accordingly, finding in favor of Plaintiff on the Declaratory Judgment count will serve a useful purpose in settling the legal relations between the parties and will help prevent piecemeal litigation, i.e. that the ruling be

dispositive in all other forums if the Defaulting Defendants still seek to recover payments on these bills.

### D. PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST ON THEIR CLAIMS

Plaintiff is entitled to pre-judgment interest on their claims. *See Gov't Employees Ins. Co. v. IAV Med. Supply, Inc.*, 2013 WL 764735, at *8-9 (E.D.N.Y. Feb. 8, 2013), *report and recommendation adopted*, 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013); (awarding prejudgment interest on common law claims); *Infinity Health Prods., Ltd.*, 2012 WL 1427796, at *10 (awarding pre-judgment interest on RICO, fraud and unjust enrichment claims); *State Farm Mut. Auto. Ins. Co. v. Cohan*, 2010 WL 890975 (E.D.N.Y. Mar. 8, 2010) *aff'd*, 409 F. App'x 453 (2d Cir. 2011) (awarding prejudgment interest on common law fraud and unjust enrichment claims); *Steinberg v. Sherman*, 2008 WL 1968297 (S.D.N.Y. May 2, 2008) ("Causes of action such as ... unjust enrichment qualify for the recovery of prejudgment interest . . . ."). This Court has recognized that a complete recovery necessarily requires the component of prejudgment interest. *See In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1166 (E.D.N.Y. 1996) ("The primary purpose for awarding pre-judgment interest is to compensate a plaintiff for the loss of the use of money.")

New York law provides for prejudgment interest on damages computed from the "earliest ascertainable date the cause of action existed or upon all of the damages from a single reasonable intermediate date" at the non-compoundable rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5001; *IAV Med. Supply, Inc.*, 2013 WL 764735 at * 8-9; *Infinity Health Prod., Ltd.*, 2012 WL 1427796 at *10; *see also Aminov*, 2014 WL 527834, at *9 (district court sitting in New York may use New York statutory rate of prejudgment interest where governing federal statute silent as to such awards) (citing *Donogue v. MIRACOR Diag.*, 00 CIV 6696 JGK RLE, 2002 WL 233188, at *4 (S.D.N.Y. Feb. 11, 2002)).

Here, in light of the substantial number and amount of fraudulent insurance claims Plaintiffs have paid, which resulted in Plaintiff's loss of the use of the funds, Plaintiff respectfully requests that interest be calculated from the first day following the year in which payments were made to the Defaulting Defendants.  Although calculating interest in this manner results in less interest that Plaintiff could seek under New York State law, it easier for the Court to calculate and has been adopted by courts within this district. *See, e.g.*, *Aminov*, 2014 WL 527834, at *9; *IAV Med. Supply, Inc.*, 2013 WL 764735, at *8-9 (utilizing "first day of the year" methodology); *Infinity Health Prod., Ltd.*, 2012 WL 1427796, at *10-12.  As to Lida's Medical, the last payment was made in 2017.  Accordingly, in 2018, interest has accrued to over $2,500.00.  The last payment to Daily Medical Equipment was in 2016, and therefore, the accrued interest exceeds $10,000.00.

## VI.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court enter default judgments against the Defaulting Defendants.

Respectfully submitted,

**GOLDBERG, MILLER & RUBIN, P.C.**

BY:  _____/s/_____
MATTHEW MORONEY, ESQUIRE
RICHARD M. CASTAGNA, ESQUIRE
Goldberg, Miller & Rubin, P.C.
767 Third Avenue
24th Floor
New York, NY 10018
646-863-1531
*Counsel for Plaintiff,*
*State Farm Mutual Automobile Insurance Company*

DATED: April 13, 2018